In the Matter of Everett W. GROSS, Bankrupt, Appellant,

v.

FIDELITY & DEPOSIT COMPANY OF MARYLAND, United States Fidelity & Guaranty Company, and Petroleum Trading and Transport Company, Appellees.

No. 16675.

United States Court of Appeals Eighth Circuit.

April 17, 1962.

A. E. Sheridan, Waukon, Iowa, made argument for appellant and was on the brief.

Thomas C. Lynch, Decorah, Iowa, made argument for appellee Petroleum Trading & Transport Company and was on the brief. Frank R. Miller of Miller, Pearson & Melaas, Decorah, Iowa, made argument for appellee Fidelity & Deposit Company of Maryland and U. S. Fidelity & Guaranty Company and was on the brief.

Before JOHNSEN, Chief Judge, and WOODROUGH and MATTHES, Circuit Judges.

MATTHES, Circuit Judge.

In this bankruptcy proceeding the broad question on appeal is whether Everett W. Gross is entitled to be discharged as a bankrupt in accordance with the provisions of § 14 of the Bankruptcy Act, 11 U.S.C.A. § 32. This section provides that the adjudication of a bankrupt shall operate as an application for a dis-

charge; for the filing of objections to the discharge; and that the court shall grant the discharge unless satisfied that bankrupt has "(2) destroyed, mutilated, falsified, concealed, or failed to keep or preserve books of account or records, from which his financial condition and business transactions might be ascertained, unless the court deems such acts or failure to have been justified under all the circumstances of the case;" or "(6) in the course of a proceeding * * * refused to * * * answer any material question approved by, the court." [1]

The three creditors of the bankrupt who appear here as appellees filed objections to the discharge. Two of the objections have relevancy here. For sake of brevity, they will be referred to as objection 1 and objection 2. Objection 1 is that "The Bankrupt has failed to keep books of account or records, from which his financial condition and business transactions might be ascertained." Objection 2 is "At the examination of the Bankrupt, the Bankrupt was un-cooperative and evasive and refused to give direct and factual answers to the interrogatories propounded to him." After a hearing on the objections, the referee overruled them; however, on petitions to review, the United States District Court reversed the action of the referee on objections 1 and 2, and entered an order denying the discharge, In re Gross, 188 F.Supp. 324, holding that the finding with respect to objection 1 "was clearly erroneous," 188 F.Supp. at p. 330, and as to objection 2 that the "Bankrupt's answers * * * were so evasive as to constitute a refusal to answer them." Bankrupt has appealed from the order denying the discharge.

█ At the outset we take cognizance of an apparent conflict in views with respect to the applicability of General Order No. 47, Title 11 U.S.C.A. following § 53.[2] The district court obviously was of the opinion that the provisions of that order apply to this proceeding, for it held at p. 327 of 188 F.Supp.: "On this review the findings of fact of the Referee are to be accepted, unless clearly erroneous. General Order in Bankruptcy No. 47, 11 U.S.C.A. following section 53." We observed in O'Rieley v. Endicott-Johnson Corporation, 8 Cir., 297 F.2d 1, at p. 4, footnote 1, that the Referee in Bankruptcy of the District of Minnesota is of the view that General Order No. 47 applies to situations where the referee acts as a special master and not as the court, and that "reviewing judges 'time and again' have misconstrued General Order 47 and assumed power to substitute findings of their own for those of the referee." In any event, and regardless of the scope and applicability of General Order No. 47, under General Order 37, Title 11 U.S.C.A. following § 53, the Rules of Civil Procedure shall be followed in bankruptcy proceedings "as nearly as may be." Rule 52(a), Federal Rules of Civil Procedure, 28 U.S.C.A. providing that "findings of fact shall not be set aside unless clearly erroneous * * *" therefore applies to bankruptcy proceedings. United States Machinery Movers v. Beller, 8 Cir., 280 F.2d 91, 94, cert. den. 364 U.S. 903, 81 S.Ct. 236, 5 L.Ed.2d 195; O'Rieley v. Endicott-Johnson Corporation, supra, 297 F.2d at p. 4.

█ In this jurisdiction it is firmly settled that where, as here, the issue stems from a general reference, the "clearly erroneous" standard is to be applied to findings of the referee and not to the findings of the district court. O'Rieley v. Endicott-Johnson Corporation, supra, at pp. 4 and 5, and cases cited. Thus posited, the question is whether

---

1. § 14, sub. c, 11 U.S.C.A. § 32, sub. c, enumerates seven grounds for refusing discharge but only grounds (2) and (6) set out above are pertinent on this appeal.

2. "Order 47. Unless otherwise directed in the order of reference the report of a referee or of a special master shall set forth his findings of fact and conclusions of law, and the judge shall accept his findings of fact unless clearly erroneous. The judge after hearing may adopt the report or may modify it or may reject it in whole or in part or may receive further evidence or may recommit it with instructions."

the findings of the referee on objections 1 and 2 are clearly erroneous. This determination must be made in light of the pronouncement of the Supreme Court of the United States that "A finding is 'clearly erroneous' when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." United States v. United States Gypsum Co., 333 U.S. 364, 395, 68 S.Ct. 525, 92 L.Ed. 746. See also Mothner v. Ozark Real Estate Company, 8 Cir., 300 F.2d 617; O'Rieley v. Endicott-Johnson Corporation, supra, 297 F.2d at pp. 5 and 6, where we considered the test to be applied.

■ Before proceeding to further consideration of the issue before us, it is pertinent to observe that statutory provisions regulating discharges are remedial in nature; they should be construed liberally with the purpose of carrying into effect the legislative intent, and that the statutory grounds for opposing a discharge should not be extended by construction. Collier on Bankruptcy, 14th Ed., Vol. 1, § 14.02[3], p. 1256. Judicial recognition of this principle has been expressed with variations. Thus we stated in Becker v. Shields, 8 Cir., 237 F.2d 622, at p. 625: "A bankrupt is entitled to a discharge unless the evidence clearly shows that he has committed an act which bars it. Farmers' Sav. Bank of Grimes, Iowa v. Allen, 8 Cir., 41 F.2d 208, 212." In Dilworth v. Boothe, 5 Cir., 69 F.2d 621, at p. 624, the court observed: "(t)he reasons for denying a discharge to a bankrupt must be real and substantial, not merely technical and conjectural." (Followed in Jones v. Gertz, 10 Cir., 121 F.2d 782, 784). Again, in Johnson v. Bockman, 10 Cir., 282 F.2d 544, 545:

"It is settled law that the Bankruptcy Act, 11 U.S.C.A. § 1 et seq., is to be liberally construed in favor of a bankrupt. A bankrupt is entitled to a discharge unless it clearly appears that he has committed some act which precludes his right thereto. And the initial burden rests upon the one objecting to establish reasonable basis for believing that the bankrupt has committed an act or acts which prevent his discharge. But when a prima facie case has been made by the one objecting to the granting of the discharge, the burden shifts to the bankrupt to clear himself of the charge established by such prima facie case. Jones v. Gertz, 10 Cir., 121 F.2d 782; Dixon v. Lowe, 10 Cir., 177 F.2d 807; McMullin v. Todd, 10 Cir., 228 F.2d 139."

In light of the foregoing principles, we are satisfied from careful examination and consideration of the record that the findings of the referee were not clearly erroneous and that the trial court improperly set aside the findings and denied an order of discharge in bankruptcy.

It is unnecessary, in view of the factual summary appearing in the trial court's opinion, to again deal extensively with the evidence. Suffice to say that Gross filed a voluntary petition in bankruptcy on January 9, 1958. No assets were listed and a trustee was not appointed. However, on December 23, 1958, and on December 17, 1959, hearings were held before the referee, at which the bankrupt was examined rather extensively. He had been connected with the Gross Oil Company which sold petroleum products at wholesale and retail. Books and records consisting largely of "invoices of purchases and sales" and social security tax records were maintained. The firm did business with a bank in Decorah, Iowa. Gross testified, without direct contradiction, that the records, stored in boxes, were left in a service station previously occupied by his company and that when "we moved from the service station over to where I am presently located, the new owners were very impatient and they hauled out and destroyed a whole bunch of records before I was able to stop them or recover them;" that the Colonial Oil Company, which had taken over the station, "allowed us to keep this one room, office room, for a period of a month until these other office

quarters were completed * * * and it was during this period of moving, * * * that they helped it along;" that "there was never any records destroyed by me or at my direction, or with my knowledge or consent." In considering and disposing of the objections, the referee found "(t)he bankrupt explained that the books of his business were destroyed after the business of the Gross Oil Company was discontinued. In 1956 the building where the business was located was taken over by someone else and a small area reserved for storage for the books, but the new occupant destroyed the books. * * * No one denies it or is in a position to deny it. The Court can hardly be expected to say it is not true. The objection as to books must be overruled." The trial court concluded that under the circumstances existing, particularly with respect to bankrupt's prior financial condition, the bankrupt had not exercised reasonable care to preserve his books and records and that his failure to do so was not justified. See p. 330 of 188 F.Supp.

■ As we have seen, objection 1 was that bankrupt had failed "to keep books of account or records." Assuming that the "failure to keep books" is sufficiently broad to encompass "failure to preserve," we are of the view that this issue was, under the facts and circumstances developed by the evidence, an issue of fact for the referee to decide. On this record we cannot say that the evidence was all one way or was so overwhelmingly one way as to compel a finding that, as a matter of law, bankrupt had failed to preserve books and records. The referee could have decided that the bankrupt's failure to preserve was not justified, but certainly he was not compelled to so find. All of the facts and circumstances were before him—resolution of the issue depended in large measure on the credibility and the weight to be given to bankrupt's testimony. The referee chose to believe his version of the destruction of the records. In this situation, and since there is authority for the proposition that a discharge should not be refused if the destruction of books and records is the result of an accident, or the act of a stranger or third person over whom bankrupt has no control,[3] we must conclude that there was no justification in the record nor any legal basis for overturning the referee's finding and to reach independent findings based upon what the trial court apparently felt the result should be.

Neither are we warranted in affirming the trial court's action in reversing the referee's finding and conclusion as to objection 2. It is vitally important to observe that the statutory ground for a denial of a discharge is a refusal "to obey any lawful order of, or to answer any material question approved by, the court." 11 U.S.C.A. § 32, sub. c(6). Appellees did not in their objections and do not on appeal assert that bankrupt *refused* to answer any question, material or otherwise. Rather, their objection was that he was "un-cooperative and evasive and refused to give direct and factual answers * * *." While the referee "thought the bankrupt was evasive" he concluded that this was not a ground for denying discharge. This conclusion finds support not only in the statute, 11 U.S.C.A. § 32, sub. c(6) but in the case of In re Fanning (D.C.E.D.N.Y., June 18, 1907), 155 F. 701, where the court stated: "The bankrupt apparently gave evasive and disrespectful answers, but there is nothing to show that he willfully concealed testimony * * *. Ordinary questions of contumacy or contempt of court can be disposed of directly, and of themselves are not to be corrected by the withholding of a discharge." See also Collier on Bankruptcy, 14th Ed., Vol. 1, § 14.58, p. 1400, footnote 3.

■ The trial court likened the evasiveness to a refusal, and apparently rested his decision on our opinion in Richardson v. United States, 8 Cir., 273

3. Collier on Bankruptcy, 14th Ed., Vol. 1, § 14.31, p. 1339; Remington on Bankruptcy, Vol. 7, § 3113, pp. 224, 225; and cf. International Shoe Co. v. Lewine, 5 Cir., 68 F.2d 517.

F.2d 144. Richardson was a criminal contempt proceeding and did not involve the question of discharge in bankruptcy. We do not believe that the statute should be amended by judicial fiat to include evasiveness in answering questions as a ground for refusing discharge.[4] In our view, equivocal and evasive answers may very properly be considered in evaluating the weight and credibility to be accorded the bankrupt's testimony, but since such conduct is not a statutory ground for refusing discharge, the trial court should have sustained the referee's finding and conclusion as to objection 2.

The order appealed from denying the discharge in bankruptcy is

Reversed.

---

4. We have read the record of both hearings and while the bankrupt's testimony was not positive and unequivocal in all respects, the cold record does not substantiate the claim of evasiveness. Furthermore, we note that without exception bankrupt answered every question.