Allen Russell **KEEBLE**, dba **A. R. Keeble** Glass Co., Appellant,

v.

Irving **SULMEYER**, Trustee in Bankruptcy, Appellee.

No. 17060.

United States Court of Appeals Ninth Circuit.

April 26, 1961.

Haskell J. Shapiro and Robert W. Zakon, Los Angeles, Cal., for appellant.

Quittner, Stutman & Treister, by George M. Treister and Herbert Wolas, Los Angeles, Cal., for appellee.

Before BARNES, JERTBERG and MERRILL, Circuit Judges.

JERTBERG, Circuit Judge.

This is an appeal from an order of the district court affirming the revocation of discharge in bankruptcy by the referee in bankruptcy, pursuant to Section 15 of the Bankruptcy Act, 11 U.S.C.A. § 33.[1]

1. "§ 33. Discharges, when revoked

"The court may, upon the application of parties in interest who have not been guilty of undue laches, filed at any time within one year after a discharge shall have been granted, revoke it if it shall be made to appear that it was obtained through the fraud of the bankrupt, that

Jurisdiction of this Court to review the order is based upon Section 24, sub. a of the Bankruptcy Act, 11 U.S.C.A. § 47, sub. a.

Appellant filed his voluntary petition in bankruptcy on June 11, 1959, and by order of the referee was granted his discharge in bankruptcy on August 20, 1959.

In schedule B-1 of the petition in bankruptcy, appearing under real estate, appellant listed a summer cottage located at 712 Wendy Avenue, Big Bear City, California, subject to a mortgage encumbrance in the amount of $1,807.39 incurred November 10, 1956 and a mortgage encumbrance of $2,000 incurred January 20, 1957, and estimated his interest therein to be $700. On schedule A-2 of the petition, under the heading "Creditors Holding Securities", appellant listed Fredrick Keeble as the holder of a second mortgage on the property above described, giving the date as 1/20/57, and the value of the security was listed as $2,000, and the amount due or claimed was listed in the same amount. In the "Statement of Affairs" filed with the petition the appellant stated that during the year immediately preceding the filing of the petition the appellant had not transferred or disposed of, other than in the ordinary course of business, any assets or properties. The appellant under oath stated that the statements contained in the petition in bankruptcy and in the "Statement of Affairs" were true to the best of his knowledge, information and belief.

At the first meeting of creditors held on July 8, 1959 the appellant testified under oath that his brother, Fredrick Keeble held a second mortgage on the Big Bear City property in the amount of $2,000; that said amount was loaned to appellant by his brother approximately two years before; that the loan was made by check, and that appellant gave his brother the second mortgage at the time the said sum was loaned to appellant. Questioned in more detail concerning the transaction at a hearing held on December 1, 1959, under Section 21, sub. a of the Bankruptcy Act, 11 U.S.C.A. § 44, sub. a, appellant testified under oath that he and his wife in May of 1957 signed and delivered to his brother a promissory note in the amount of $2,000, made payable to his brother; that the deed of trust was prepared at the same time and retained in appellant's possession until May of 1959, when it was signed and notarized by appellant and his wife and recorded.

On January 7, 1960 the trustee filed with the referee a petition to revoke appellant's discharge in bankruptcy. The referee issued an order to show cause directed to appellant, and a hearing was held. At this hearing it was stipulated that the particular bank forms upon which the note and second trust deed were prepared were printed for the first time in August 1958. At this hearing appellant testified that these documents were actually executed and delivered shortly before bankruptcy in May, 1959; that another note and trust deed had been made in 1957 but had been lost and that the note and deed of trust prepared in 1959 were intended as substitutes for the lost instruments.

The referee found in his findings of fact that although the note and second deed of trust bear the date May 7, 1957, they were actually prepared and executed by the bankrupt and delivered to his brother in May 1959, within one month preceding the filing of the bankruptcy petition; that the bankrupt represented under oath that the note and deed of trust were either prepared by him, or executed by him, during the year 1957, whereas the said documents were prepared for the first time in May 1959; that the false representations were made in the schedules, particularly in schedule A-2 therein, and in item 11 of the "Statement of Affairs"; that the bankrupt testified falsely as to the date of preparation of

the knowledge of the fraud has come to the petitioners since the granting of the discharge and that the actual facts did

not warrant the discharge. July 1, 1898, c. 541, § 15, 30 Stat. 550; June 22, 1938, c. 575, § 1, 52 Stat. 851."

the documents at the first meeting of creditors held on July 8, 1959, and at the time of his examination under Section 21, sub. a of the Bankruptcy Act on December 1, 1959; that until after his examination under Section 21, sub. a on December 1, 1959 the bankrupt did not disclose to his attorneys the true date upon which said note and deed of trust were prepared and executed; and that the trustee did not have knowledge pertaining to the date of preparation and execution of the note and deed of trust until after the entry of the order granting the bankrupt's discharge. As conclusions of law the court found that the oaths made by appellant in his schedule and statement of affairs, in his testimony at the first meeting of creditors, and in his testimony at the hearing under Section 21, sub. a of the Bankruptcy Act were false within the meaning of Title 18 U.S.C.A. § 152;[2] that the false statements pertained to matters material in the bankruptcy proceeding; that the false oaths constituted grounds for objection to the bankrupt's discharge under Section 14, sub. c(1) of the Bankruptcy Act, 11 U.S.C.A. § 32 sub. c(1);[3] that by misrepresenting and concealing facts pertaining to the date of the preparation and execution of the note and deed of trust the bankrupt obtained his discharge through fraud; that the trustee was denied the opportunity to object to the bankrupt's discharge upon said ground because of bankrupt's fraud in concealing the true facts; and that the discharge of the bankrupt should be revoked under Section 15 of the Bankruptcy Act, 11 U.S.C.A. § 33. The order of the referee revoking appellant's discharge was affirmed by the district court on petition for review of the referee's order.

Appellant's basic contention on this appeal is that the evidence was insufficient upon which to base the order of revocation of appellant's discharge in bankruptcy because of the claimed absence of any intent on the part of appellant to defraud the bankruptcy court, and that the false oaths made by appellant did not relate to a material matter in the bankruptcy proceedings.

We are of the view that any fraud on the part of appellant which would have prevented a discharge in bankruptcy under Section 14, sub. c(1), 11 U.S.C.A. § 32, sub. c(1), is sufficient to revoke a discharge under Section 15 of the Bankruptcy Act, 11 U.S.C.A. § 33, provided that the party seeking the revocation has not been guilty of undue laches; filed his application to revoke the discharge within one year after the same shall have been granted; and knowledge of the fraud was acquired subsequent to the discharge. See In Re Hannan, 7 Cir., 1942, 127 F.2d 894. On this appeal appellant makes no contention that the appellee was guilty of undue laches, or that the application to revoke was not filed within one year after the discharge was granted. There is sufficient evidence to establish that knowledge of the false oaths made by appellant was acquired after appellant's discharge in bankruptcy.

The real question, therefore, on this appeal is whether or not appellee could have successfully prevented the granting of the discharge in bankruptcy if appellee had acquired knowledge of the false oaths prior to the granting of the same. Appellant concedes that the oaths made by him to the statements appearing in the schedules, in the "Statement of Affairs", and to the testimony

---

**2.** Section 152: " * * * Whoever knowingly and fraudulently makes a false oath or account in or in relation to any bankruptcy proceeding; * * * shall be fined not more than $5,000 or imprisoned not more than five years, or both."

**3.** "§ 32. Discharges, when granted

"(a) The adjudication of any person, except a corporation, shall operate as an application for a discharge:
* * * * *
"(c) The court shall grant the discharge unless satisfied that the bankrupt has (1) committed an offense punishable by imprisonment as provided under section 152 of Title 18; * * * *".

at the first meeting of creditors and at the Section 21, sub. a hearing were false. His contention is that such oaths were not fraudulently made and that the evidence is insufficient to support an inference that such false oaths were made with intent to defraud. It is clear to us that an examination of the schedules and the "Statement of Affairs" would reasonably lead the trustee to believe that the note and deed of trust were completely executed and delivered in 1957, some two years before the petition in bankruptcy was filed, and two years before the instruments were actually executed and delivered. A review of the testimony given by appellant under oath at the first meeting of creditors would reasonably produce the same conviction in the mind of the trustee. Such testimony apparently led appellant's counsel to the same conclusion, since he states in his opening brief that "the appellant testified that the note and deed of trust in question were executed in May 1957." Clearly, a strong inference would arise from the foregoing recital that the false oaths were made by appellant in the hope or belief that the appellee would not scrutinize and examine the transaction in detail and thereby mislead the trustee in not making a detailed investigation into the circumstances surrounding the execution and delivery of such instruments. It must be borne in mind that appellant's creditor in this case was his own brother who, if the instruments were not challenged, would enjoy the status of a secured creditor. The trier of the fact was completely justified under the circumstances in inferring that the false oaths were made with intent to defraud the bankruptcy court and interfere with the orderly administration of the bankrupt estate. Furthermore, appellant persisted in his false testimony at the Section 21, sub. a hearing, when he testified that the note was signed in 1957 and the deed of trust prepared at the same time. Proof beyond a reasonable doubt is not required to sustain a denial of discharge in bankruptcy, but in our view the evidence in this case is clear and convincing that the false oaths made by appellant were knowingly and fraudulently made.

While the proviso which appears in Section 14, sub. c of the Bankruptcy Act, 11 U.S.C.A. § 32, sub. c, reading as follows: "Provided, That if, upon the hearing of an objection to a discharge, the objector shall show to the satisfaction of the court that there are reasonable grounds for believing that the bankrupt has committed any of the acts which, under this subdivision, would prevent his discharge in bankruptcy, then the burden of proving that he has not committed any of such acts shall be upon the bankrupt," has not been called to our attention in the briefs of the parties, we note that under this proviso the courts have held that the making of a false oath is sufficient to justify an inference of an intent to defraud, and that the burden of proof is on the party objecting to the discharge to make out a prima facie case, but once he has done so the burden shifts to the bankrupt. In re Kaufhold, 3 Cir., 1958, 256 F.2d 181; Aronofsky v. Bostian, 8 Cir., 1943, 133 F.2d 290. This rule shifting the burden of proof was applied in the somewhat analogous case of Shanberg v. Saltzman, 1 Cir., 1934, 69 F.2d 262. In that case objecting creditors charged that the bankrupt falsified dates on notes payable to his brother-in-law, who was listed as a creditor by the bankrupt on the schedules. The bankrupt admitted testifying falsely concerning certain particulars relating to the dates of these notes. The court held that upon a showing of a knowingly false statement the burden of proof shifted to the bankrupt. It was not until the hearing on appellee's petition to revoke the discharge that appellant admitted the falsity of his prior oaths and that the instruments in question were actually executed and delivered on the eve of the filing of the petition in bankruptcy. In view of the entire record in this case, the trier of fact was not bound to believe appellant's explanation, and he was fully justified in drawing the inference that the false oaths were knowingly and fraudulently made.

Appellant argues that there is in the record no specific finding of fraudulent intent on the part of the bankrupt in making the false oaths. It is clear from the findings and conclusions of law that the appellant obtained his discharge through fraud. It is implicit in the findings, some of which may be denominated conclusions of law, that the false oaths made by appellant were knowingly and fraudulently made.

■■ Appellant further argues that there was no fraudulent concealment on the part of appellant because the trustee was aware of the existence of the Big Bear City property, and because appellant had been advised by his attorneys at the time of filing his petition in bankruptcy that the deed of trust would be invalidated due to the late recording of the deed of trust. In re Parsons, 2 Cir., 1937, 88 F.2d 428, held that a bankrupt had a duty to disclose a quit claim deed to his wife, even though it was shown that her legal title had become vested prior to the execution of the quit claim deed, on the ground that a trustee is entitled to full disclosure in order to investigate the bankrupt's affairs. This principle is applicable to this case. A false oath cannot be justified on the ground that the person to whom it is made knows or should know the truth despite the falsehood. Appellant's contention on this point is that there was no intent on the part of the appellant to defraud because appellant knew that he was going to lose the property because of the late recording of the deed of trust. This argument is not convincing in view of the false oaths made by the bankrupt prior to his discharge, and which would reasonably divert the trustee from his investigation of the bankrupt's affairs.

■ Appellant's final contention is that even if fraudulent intent be shown, the false oaths did not relate to matters material in the bankruptcy proceedings. In our view, the false oaths in question were highly material to the orderly administration of the bankrupt estate. The deed of trust in question if actually executed just before bankruptcy was vulnerable to attack as a preference, Section 60 of the Bankruptcy Act, 11 U.S. C.A. § 96, and perhaps as a fraudulent transfer, Section 67, sub. d, of the Bankruptcy Act, 11 U.S.C.A. § 107, sub. d. If appellant by false oaths could mislead the trustee into the belief that the deed of trust was executed two years prior to bankruptcy the deed of trust might not have been challenged, as only preferences made within four months of bankruptcy and only fraudulent transfers made within one year of bankruptcy were vulnerable under the sections above stated. Similarly, if the giving of the second trust deed amounted to a fraudulent transfer, this would constitute a ground for objection to appellant's discharge only if the trust deed were made within a one-year period preceding bankruptcy, Section 14, sub. c(4) of the Bankruptcy Act, 11 U.S.C.A. § 32, sub. c(4). For such reasons, any false oaths pertaining to the date of execution of the second deed of trust were clearly material. This case is distinguishable from Willoughby v. Jamison, 8 Cir., 1939, 103 F.2d 821, relied upon by appellant. In that case the bankrupt falsely testified that his wife purchased property owned by her with money inherited from her mother's estate when in fact the property was purchased with money given to the bankrupt's wife by a friend. When it became clear that the bankrupt had not provided his wife with any funds it ceased to be material who had provided the funds. The false testimony given by the husband was only to protect a confidential matter from public disclosure. Other cases relied upon by appellant involved the omission from the schedules of an item of property or the name of a creditor, which cases are not persuasive in view of the facts in the instant case.

The order of the district court is affirmed.